The Honorable Roger L. Rorie State Representative P.O. Box 136 Fox, Arkansas 72051-0136
Dear Representative Rorie:
This is in response to your request for an opinion on fourteen questions regarding issues related to Fairfield Bay. Initially, it is my understanding that Fairfield Bay is a city of the second class operating under the mayor/council form of government. It should also be noted that the answers to certain of your questions will turn upon a determination of all of the attendant facts, as presented and established by all of the interested parties. A factual determination of this nature can only be conducted by a court. Your questions are restated and addressed below in the order posed.
Question 1 — In the absence of an ordinance prescribing the manner ofsetting the agenda for a council meeting, may ordinances and/orresolutions be introduced without first submitting them to the mayor orcity attorney for advance review and approval?
In reviewing the sections of the Arkansas Code Annotated that govern ordinances and city council meetings, I have not found any statute that requires that an ordinance or resolution be submitted to either the mayor or the city attorney for advance review or approval. Chapter 55 of Title 14 of the Arkansas Code Annotated governs "Ordinances of Municipalities." That chapter does contain a provision which provides: "[a]ll bylaws and ordinances of a general or permanent nature shall be fully and distinctly read on three (3) different days unless two-thirds (2/3) of the members composing the municipal council shall dispense with the rule." A.C.A. §14-55-202 (1987). This provision, however, is simply a general reading requirement. Also, it is not applicable to either an ordinance that is not of a general or permanent nature or a resolution. Adams v. Sims,238 Ark. 696, 385 S.W.2d 13 (1964). Although I have not found any statutory requirement regarding the prior review of an ordinance or resolution, this office has previously opined that the city's governing body may adopt its own regulations and rules of procedure when they are not prescribed by statute or charter provision. Op. Att'y Gen. No. 95-152; 62 C.J.S. Municipal Corporations § 400(a) (1949). "A municipal council has inherent power to make rules of procedure for its own government, provided such rules are not inconsistent with the constitution, its municipal charter, or any statute of the state." 56 Am.Jur.2d MunicipalCorporations, Etc. § 156 (1971). Consequently, in the absence of an ordinance establishing rules of procedure or prescribing the manner of setting the agenda for a council meeting, it is my opinion that an ordinance or resolution need not be submitted to the mayor or city attorney for advance review and approval.
Question 2 — Under the provisions of A.C.A. § 14-43-504(b)(3), can thecity council set the hours during which the city office is to be open andrequire that the mayor and/or recorder-treasurer shall be present in theoffice? Also, can the city council require that each of these officialsleave word where they can be reached and when they will return if theymust leave the office during those hours?
Arkansas Code Annotated § 14-43-504(b)(3) (Supp. 1995) provides that the mayor shall perform such other duties compatible with the nature of his office as the city council may from time to time require. Initially, it must be noted that by the terms of the Code A.C.A. § 14-43-504 applies to a city of the first class, and it is my understanding that Fairfield Bay is a city of the second class. It is my opinion, however, that the rule regarding the city council's authority to prescribe other duties is also applicable by implication to cities of the second class. Although A.C.A. § 14-44-107 (1987) provides the general powers of a mayor of a city of the second class, the statute does not describe the duties of the mayor.
In a comparable situation, this office opined that the rules set forth in A.C.A. § 14-43-502 (1987), entitled "Powers of council generally," are applicable by implication to cities of the second class, there being no other specification in the Code of the general powers and duties of the city council of a city of the second class. Op. Att'y Gen. No. 95-367. By the terms of the Code, A.C.A. § 14-43-502 also only applies to a city of the first class. Section 14-43-502 provides in part:
 (a) The city council shall possess all the legislative powers granted by this subtitle and other corporate powers of the city not prohibited in it or by some ordinance of the city council made in pursuance of the provisions of this subtitle and conferred on some officer of the city.
 (b)(1) The council shall have the management and control of finances, and of all the real and personal property belonging to the corporation.
This office opined that § 14-43-502 generally describes the powers of city councils of cities of the second class, as well as of the first class. See Op. Att'y Gen. No. 95-367. That opinion was based in part uponConner v. Burnett, 216 Ark. 559, 226 S.W.2d 984 (1950), where the court stated that Act 1 of 1875 was a comprehensive statute governing cities and towns and that it was appropriate to consider the act as a whole, including those portions expressly applying only to cities of the first class, when determining the powers of cities of the second class. It should be noted that § 14-43-504 was also originally enacted as part of Act 1 of 1875, and provisions (a) through (d) simply specify the duties of the "mayor of the city."
As to the office of recorder-treasurer, A.C.A. § 14-44-109 (1987) grants the city council, in a city of the second class, the authority to prescribe the duties of the recorder-treasurer. See also Op. Att'y Gen. No. 96-052. In Opinion 96-052, this office opined that the city council has the authority to prescribe additional duties to the recorder-treasurer, such as performing the duties of the water clerk. In short, under A.C.A. §§ 14-43-504(b)(3) and 14-44-109 the city council may prescribe by ordinance the duties of the mayor and the recorder-treasurer. This authority, however, is limited in that the duties of the mayor must be compatible with the nature of his office and the duties of the recorder-treasurer must be consistent with the provisions of the statutes regarding municipal government. Finally, under A.C.A. § 14-43-502 the executive authority of a city of the second class generally resides with the city council, except to the extent bestowed upon or delegated to another by state statute or ordinance. See Op. Att'y Gen. No. 95-367.
Although the issue of office hours is not addressed in the applicable statutes, the Arkansas Supreme Court has held that a quorum court has the authority pursuant to its local legislative authority to require that all county constitutional offices be open to serve the public from 8:00 a.m. until 4:30 p.m. Walker v. Washington, Co., 263 Ark. 317, 564 S.W.2d 513
(1978). Similarly, the city council possesses local legislative authority regarding city affairs. See A.C.A. § 14-43-502. Thus, a persuasive argument could be made that the city council may establish the hours during which the city office must be open. Further, it is my opinion that the city council may prescribe by ordinance the duties, consistent with applicable statutes, of the mayor and recorder-treasurer. It is, however, unclear to what extent the city council may direct the day-to-day operation of an executive office.
Question 3 — When the City of Fairfield Bay was organized in 1993, thecity council passed an ordinance combining the offices of recorder andtreasurer into the single office of recorder-treasurer. In July 1996 thecouncil passed an ordinance repealing the 1993 ordinance and creating thetwo offices of recorder and treasurer. Simultaneously, the remunerationfor the office was reduced from $7.50 per hour for the combined office to$6.00 per hour for each of the new offices. The ordinance was to beeffective at 11:59 p.m. on December 31, 1996; however, an emergencyclause was adopted at the same meeting making the ordinance effectiveimmediately upon publication. Since at the time of the July meeting, wehad a sitting recorder-treasurer, is it wrong to assume that thisordinance was invalid as to timing because of the emergency clause andbecause of the reduction in rate of pay during the term for which theofficer was elected. Does this violate A.C.A. § 14-42-113?
Arkansas Code Annotated § 14-42-113 (1987) expressly provides that "[t]he salaries of officials of cities of the first and second class and incorporated towns may be increased, but not decreased, during the term for which the officials have been elected or appointed." The recorder-treasurer is an official of the city. A.C.A. § 14-44-114
(1987). Consequently, the city council is prohibited from taking official action to decrease the salary of the recorder-treasurer during the term for which she has been elected. See Op. Att'y Gen. No. 88-146.
In addition, it is my opinion that the city council ultimately may separate the recorder-treasurer position into two separate positions; however, it is my opinion that the two positions may not be separated during the elected recorder-treasurer's term. See Op. Att'y Gen. No.95-187. In Opinion No. 95-187, this office opined that a city of the first class could separate the clerk-treasurer position into two separate positions. Similarly, I find that the recorder-treasurer position may be separated into two positions based upon the fact that a city of the second class is given the authority to elect a recorder and a treasurer. A.C.A. § 14-44-109 (1987). Also, the statute allowing the combination of the two offices contemplates that the two offices are separate and grants the city council the discretion to combine the offices. Finally, the statute allowing the combination of the two offices does not indicate that the offices, once combined, cannot be separated. See Op. Att'y Gen. No. 95-187.
In Opinion No. 95-187, this office also opined that the two positions (clerk-treasurer) could not be separated during the elected treasurer's term. This conclusion was based upon the fact that the statutes that govern city clerks and treasurers provide that the person elected to the positions of clerk or treasurer must hold office until a successor is elected and qualified. Similarly, the statute that governs treasurers and recorders for cities of the second class states that the person elected shall hold office until his successor is elected and qualified. A.C.A. §14-44-109 (1987). In Opinion No. 95-187, this office recognized that: (1) an elected officer cannot be replaced with another person unless the office has been legally vacated, and (2) an elected officer is entitled to serve the entire term to which he or she was elected. In the instant case, the recorder-treasurer was elected to serve in the position of recorder and the position of treasurer for a stated term. To name another person to fill either of the positions to which the recorder-treasurer was elected or to change the terms for which she was elected, unless either of the positions has been vacated in a manner allowed by law, would contravene the will of the city's voters.
Question 3a — Since the passage of the new ordinance, therecorder-treasurer has resigned. When her resignation was read at thecouncil meeting of August 12, I reminded the mayor of the provisions ofA.C.A. § 14-44-116. He indicated that he personally had not been servedwith a copy of the resignation notice (all of the councilmen were servedwith such notice). The mayor then assumed the duties of therecorder-treasurer, both in taking minutes of the meeting and also inhandling the office duties of that position. Is this a violation ofA.C.A. § 14-42-107(a)(2)? Also, must the mayor be served with notice ofsuch resignation?
In your letter, you simply state that the recorder-treasurer's resignation was read at the council meeting. It is my opinion that the resolution of your question will depend upon whether the city council accepted the recorder-treasurer's resignation. This is a question of fact which is beyond the scope of an attorney general's opinion. The Arkansas Supreme Court has stated that the general rule is that a "mere presentation of a resignation does not work a vacancy and a resignation is not complete until accepted by the proper authority." Rider v. City ofBatesville, 220 Ark. 31, 245 S.W.2d 822 (1952). The acceptance of a resignation, however, may be either express or implied. Op. Att'y Gen. No. 91-014; 62 C.J.S. Municipal Corporations § 502 (1949). This office has specifically stated that a resignation of a council member is effective upon its "acceptance" (when acted upon) by the city council.See Op. Att'y Gen. Nos. 96-073 and 91-014. Similarly, it is my opinion that the resignation of a recorder-treasurer is effective upon its "acceptance" by the city council. Further, there are no statutory provisions which require that the mayor be served with prior notice of such resignation.
If a vacancy has occurred due to the resignation of the recorder-treasurer, then A.C.A. § 14-44-116 (1987) mandates the procedure that must be followed. Section 14-44-116 provides:
 Whenever a vacancy shall occur in the office of recorder in any city of the second class, at the first regular meeting after the occurrence of the vacancy, the city council shall proceed to elect, by a majority vote of all the aldermen, a recorder to serve for the unexpired term.
(Emphasis supplied.) This office has concluded that this provision reasonably encompasses the office of recorder-treasurer. Op. Att'y Gen. No. 95-054. Consequently, the mayor of a city of the second class cannot simply assume the duties of the recorder-treasurer.
Question 4 — May an alderman be elected by the city council to fill avacant position of recorder-treasurer under the provisions of A.C.A. §14-44-116, § 14-42-107(a)(2), and § 14-42-103(b)?
It is my opinion that an alderman may be elected to fill the vacant position of recorder-treasurer; however, it is unclear whether an alderman may simultaneously serve as both an alderman and as the recorder-treasurer. Arkansas Code Annotated § 14-42-107(a)(2) (1987) provides:
 No alderman or council member shall be appointed to any municipal office, except in cases provided for in this subtitle, during the time for which he may have been elected.
However, § 14-42-107 must be read in conjunction with A.C.A. § 14-42-103
(1987) which provides:
 (a) Vacancies in municipal offices which are authorized by state law to be filled by appointment by the city or town governing body shall require a majority vote of the remaining members of the governing body. However, there must always be a majority of a quorum of the whole number of the governing body to fill the vacancy.
 (b) The governing body may appoint any qualified elector, including members of a governing body, to fill the vacancy. However, a member of the governing body shall not vote on his own appointment.
(Emphasis supplied.) Thus, A.C.A. § 14-42-103 specifically allows a governing body to appoint one of its own members to fill a vacancy in a municipal office where state law permits the governing body to fill the vacant office by appointment. Section 14-44-116 permits the city council to fill a vacancy in the position of recorder-treasurer by election.[1]
Consequently, it is my opinion that the city council may elect an alderman to fill the vacant office of recorder-treasurer.[2] Seegenerally Op. Att'y Gen. Nos. 88-083 and 93-286.
It is, however, also my opinion that simultaneous service as both alderman and recorder-treasurer may be prohibited by the common law "incompatibility of offices" doctrine. See Byrd v. State, 240 Ark. 743,402 S.W.2d 121 (1966); Tappan v. Helena Federal Savings LoanAssociation, 193 Ark. 1023, 104 S.W.2d 458 (1937). In the context of dual office-holding, there are three categories of unlawful conflicts of interest: a constitutional conflict, a statutory conflict, and a conflict created by offices having incompatible duties. Op. Att'y Gen. No.96-025; Byrd v. State, 240 Ark. 743, 402 S.W.2d 121 (1966). Although I have found no constitutional or statutory prohibition to an alderman's simultaneous service as recorder-treasurer, it is my opinion that service in both offices may be prohibited by the common law "incompatibility of offices" doctrine.[3]
Initially, it must be determined whether the common law doctrine has been altered by A.C.A. § 14-42-103. The General Assembly has adopted English common law as the law of Arkansas, unless altered or repealed by statute. Ark. Code Ann. § 1-2-119 (Repl. 1996); Nelson v. State,318 Ark. 146, 883 S.W.2d 839 (1994). The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. Mountain Home Sch. Dis. v. T.M.J.Builders, 313 Ark. 661, 858 S.W.2d 74 (1993). In considering the meaning of a statute, the Arkansas Supreme Court will construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id.
Although A.C.A. § 14-42-103 allows a member of the governing body to be appointed to fill certain vacancies, the statute makes no mention of whether the member of the governing body may simultaneously serve in both positions. Granted, § 14-42-103 does not specifically prohibit the simultaneous service in question; however, the fact that the dual office-holding is not specifically prohibited does not necessarily preclude the application of the common law prohibition. See Price v.Edmonds, 232 Ark. 381, 337 S.W.2d 658 (1960).
In short, it is unclear whether A.C.A. § 14-42-103 alters common law by authorizing simultaneous service, thus perhaps suggesting the need for future legislative clarification. While the answer to your question may therefore ultimately require judicial interpretation, in the absence of clear legislative guidance, I believe that a persuasive argument could be made that § 14-42-103 does not alter common law and an alderman's simultaneous service in filling out the appointed office of recorder-treasurer would be prohibited by the common law "incompatibility of offices" doctrine. But see Op. Att'y Gen. No. 88-083 (commenting that A.C.A. § 14-42-103 may permit simultaneous service as mayor and alderman).
Even assuming that the common law doctrine has not been altered, the determination of incompatibility is essentially a question of fact to be resolved by a court, and my research has not disclosed an Arkansas case directly on point with respect to the offices in question in this instance. The question generally, however, is whether the discharge of the duties of one office conflicts with the duties of the other to the detriment of the public good. Op. Att'y Gen. No. 95-054; Murphy v.Townsend, 72 Ark. 180, 79 S.W. 782 (1904). It has been stated under this doctrine that incompatibility exists "where there is a conflict of interests, which includes, inter alia, where one office is subordinate to the other." Byrd, supra. The Court in Tappan, supra, stated:
 The inconsistency which at common law makes offices incompatible . . . lies rather in the conflict of interest, as where one is subordinate to the other and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one office has the power to remove the incumbent of the other.
Assuming that the common law has not been altered, it is my opinion that the offices of alderman and recorder-treasurer in this instance are clearly incompatible due primarily to the power of the city council to remove an appointed officer. A.C.A. § 14-42-109 (1987); see also Op. Att'y Gen. Nos. 95-075, 94-102, and 91-415. Section 14-42-109(a)(2) states that the city council may provide, by ordinance, for the removal of any appointive officer upon a majority vote of the council. In the situation you have presented, the recorder-treasurer would be an appointive officer. In addition, Amendment 56, § 4, to the Arkansas Constitution places responsibility for the compensation of municipal officers with the governing body of the municipality. Finally, the conclusion that the offices are incompatible is supported by the fact that the city council also has the power to prescribe by ordinance the duties of the recorder-treasurer. A.C.A. § 14-44-109 (1987). Again, however, it is unclear whether A.C.A. § 14-42-103(b) was intended to authorize this simultaneous service and to abrogate the application of the common law doctrine in this instance. Legislative or judicial clarification is indicated.
Question 5 — If the positions of recorder and treasurer are combined, isit permissible for the council to appoint a deputy recorder without firstdividing the combined office?
In my opinion, the answer to your question is generally "yes." Although your question states that the offices of recorder and treasurer have been combined, I have found no statute prohibiting a city from only appointing a deputy recorder. In fact, the position of deputy recorder for a city of the second class does not appear to be addressed by statute. However, the fact that one person holds the office of recorder-treasurer does not mandate that there may only be a deputy recorder-treasurer. As part of its legislative authority, the city council may determine that a person is needed to assist the recorder-treasurer in performing the "recorder" related duties of that office.
It must, however, be noted that the person who is elected recorder-treasurer actually holds both the office of recorder and the office of treasurer. See Question 3. Further, the person elected recorder and/or treasurer must perform the duties that are prescribed by law or ordinance. See A.C.A. § 14-44-109 (1987); Op. Att'y Gen. Nos. 96-052 and 95-187. Consequently, it is my opinion that the city council may not appoint a deputy recorder to simply perform the actual duties of the recorder, thereby supplanting the actual recorder-treasurer. Seegenerally Op. Att'y Gen. No. 95-187. If the city council appointed another person to perform the duties of the office of the recorder, that person would not have been elected by the city's qualified voters, as required by law. See Op. Att'y Gen. No. 95-187.
Question 6 — Under the provisions of A.C.A. § 14-44-109(b), if no dutiesare prescribed by ordinance for the recorder-treasurer, may that officialperform some of the work of that office at home if a city office isprovided? (It is assumed that the results of such work will be returnedto, and filed in, the city office after it is completed.)
It is my opinion that the answer to your question is "yes." Arkansas Code Annotated § 14-44-109 (1987) provides that the recorder and treasurer "shall have such powers and perform such duties as are prescribed in this subtitle, or as may be prescribed by any ordinance of the city, consistent with the provisions of this subtitle." State law, however, does not address the issue of whether the recorder-treasurer may perform some of the work of that office at home. Although this office has not addressed this specific issue, we have opined that it is improper for a city clerk to maintain records at his or her home, rather than at the clerk's office. Op. Att'y Gen. No. 88-110. Similarly, it is my opinion that it would be improper for the recorder-treasurer to maintain records at his or her home; however, your question assumes that the completed work will be returned to and filed in the recorder-treasurer's office. In sum, if no duties are prescribed by ordinance for the recorder-treasurer, it is my opinion that the recorder-treasurer may perform some of the work of that office at home.
As discussed in Question 2, A.C.A. § 14-44-109 grants the city council, in a city of the second class, the authority to prescribe the duties of the recorder-treasurer. Consequently, this is a matter properly addressed by city ordinance.
Question 7 — May the city council delegate its authority under A.C.A. §14-44-109(b) to the mayor by ordinance?
It is my opinion that the answer to your question is "no." Arkansas Code Annotated § 14-44-109 (1987) provides:
 (a) At the time prescribed in this subtitle, the qualified voters of each city of the second class shall elect a city marshal, city recorder, and city treasurer. Each of these officers shall continue in office until his successor is elected and qualified.
 (b) These officers shall have such powers and perform such duties as are prescribed in this subtitle, or as may be prescribed by any ordinance of the city, consistent with the provisions of this subtitle.
(Emphasis supplied.) Your question hinges on statutory interpretation. The Arkansas Supreme Court has stated that the first rule in considering the meaning of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language.Mountain Home Sch. Dis. v. T.M.J. Builders, 313 Ark. 661, 858 S.W.2d 74
(1993). The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. Id. Where the language of a statute is plain and unambiguous, the court will determine legislative intent from the ordinary meaning of the language used. Id.
It is my opinion that A.C.A. § 14-44-109(b) plainly provides that the specified officers shall have such powers and perform such duties as "may be prescribed by any ordinance of the city." This office has specifically opined that the mayor does not have the authority to alter the duties of the recorder-treasurer unilaterally. Op. Att'y Gen. No. 96-052. We concluded that the authority to establish the duties of the recorder-treasurer resides with the city's legislative body, pursuant to A.C.A. § 14-44-109(b). Id. In sum, I find that § 14-44-109(b) only permits additional powers or duties to be prescribed in an ordinance; the language is plain and unambiguous. If the city council delegated its authority to prescribe additional powers or duties, then the actual powers or duties of the officers would not be prescribed by an ordinance of the city.
Question 8 — In the event a candidate is elected to the office ofrecorder, and no candidate has filed for the office of treasurer, may theoutgoing city council, at its meeting in November or December pass anordinance to re-combine these offices? If not, may the new council do soat its first meeting in January?
It is my opinion that the General Assembly did not intend to authorize a city of the second class to combine the offices of recorder and treasurer during the term for which an incumbent has been elected. However, this question can only be definitively resolved by a court.
It has been stated that a municipal office is not property in the constitutional sense, and the legislature may abolish an office during the term for which the incumbent was elected or appointed, without violating any of her constitutional rights. 56 Am.Jur.2d MunicipalCorporations § 238 (1971). The statute authorizing the city council to combine the office of recorder provides in part:
 The city council of any city of the second class in the State of Arkansas, if the council deems it to be in the best interests of the city, and upon passage of an ordinance by a majority vote of the council, may combine the offices of city recorder and city treasurer, thereby authorizing one (1) person to hold this position.
A.C.A. § 14-44-114 (1987). This statute, however, fails to address whether the offices may be combined during the term for which an incumbent has been elected; the provision simply provides that a city council may combine the offices.
On the other hand, A.C.A. § 14-44-109 (1987) provides in part:
 At the time prescribed in this subtitle, the qualified voters of each city of the second class shall elect a city marshal, city recorder, and city treasurer. Each of these officers shall continue in office until his successor is elected and qualified.
This provision makes it mandatory that the recorder and treasurer continue in office until his or her successor is elected and qualified.[4] Further, as discussed in answering Question 3, this office has recognized that an elected officer is generally entitled to serve the entire term to which he or she was elected. To change the terms for which either the recorder or treasurer were elected would contravene the will of the city's voters. Consequently, it is my opinion that in all likelihood the General Assembly did not intend to authorize the city council to combine the offices of recorder and treasurer during the term for which an incumbent has been elected.
Question 9 — Would the continuation of the appointment of a cityattorney, following the election of his wife as recorder, be subject to achallenge of nepotism or conflict of interest, or for any other reason?
In my opinion, the answer to your question is, generally, "no." This office has concluded that state law does not include a general nepotism prohibition. Op. Att'y Gen. Nos. 92-344 and 89-220. Arkansas Code Annotated § 21-8-304(a) (1987) provides:
 No public official or state employee shall use his position to secure special privileges or exemption for himself, his spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he has a substantial financial relationship, that is not available to others, except as may be otherwise provided by law.
This office, however, has opined that employment would not, as a general matter, constitute a "special privilege or exemption" for purposes of A.C.A. § 21-8-304(a).[5] Op. Att'y Gen. No. 89-220. Similarly, it is my opinion that the city council's appointment of a person to the office of municipal attorney would not, as a general matter, constitute a "special privilege or exemption." Further, only the mayor and the city council may appoint the municipal attorney in a city of the second class; the recorder does not participate in the appointment. See A.C.A. § 14-42-112 (Supp. 1995). It should, however, be noted that if the recorder somehow participated in the process, a court would ultimately have to determine, based upon all of the attendant facts, whether the recorder used her position to secure a special privilege for her spouse.
It should also be noted that this opinion does not address any potentially applicable local ordinances. A city has the authority to adopt its own nepotism policy. See Op. Att'y Gen. Nos. 94-017 and 95-097. Consequently, any applicable local ordinance should be reviewed.
Finally, it is my opinion that the mere fact that the recorder and city attorney are husband and wife will not in itself create a conflict of interest. Consequently, the continuation of the appointment of a city attorney following the election of his wife as recorder is not prohibited. However, it is possible, depending on the circumstances, that conflicts may exist. A conflict might be presented whenever the interests of the city and the recorder are adverse. A municipal attorney represents the city in both civil and criminal matters; it is possible that the recorder's interest, either individually or officially, could at some point be adverse to the interests of the city. Of course, as a general rule, determinations regarding conflicts of interest must be made on a case by case basis.
Question 10 — In the event no candidate is on the ballot for analdermanic position, does the person whose term is ending carry over intothe next term, or is the city council empowered to declare the positionvacant and elect a replacement under A.C.A. § 14-44-104?
It is my opinion that the present alderman may retain his position until his successor is elected and qualified. See Op. Att'y Gen. No. 90-301. Arkansas Code Annotated § 14-44-104 (1987) provides:
 Whenever a vacancy shall occur in the office of alderman in any city of the second class, at the first regular meeting after the occurrence of the vacancy, the city council shall proceed to elect, by a majority vote of the council, an alderman to serve for the unexpired term.
Accordingly, it must be determined whether the failure of a successor to be elected to the position of alderman would constitute a "vacancy" within the meaning of A.C.A. § 14-44-104, such that the city council may elect an alderman to serve for the unexpired term. See generally Op. Att'y Gen. No. 94-069. This office has stated that as a general matter, it does not appear that a vacancy is necessarily created when there has been a failure to elect an individual to succeed an incumbent in office. Op. Att'y Gen. No. 94-069. In fact, Ark. Const. art. 19, § 5 provides: "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified." This office has applied this provision to the position of alderman and concluded that an incumbent alderman is authorized to hold office until his successor is elected and qualified. Op. Att'y Gen. Nos. 95-401, 94-303, and 90-301.
It should, however, be noted that in the event the incumbent alderman refuses to continue to serve, a vacancy would exist such that the city council may elect an alderman to serve for the unexpired term. See Op. Att'y Gen. No. 90-301.
Question 11 — Is it permissible for the city council to designate theMayor, Treasurer, and one designated alderman as authorized signatorieson city checks with the stipulation that two of the three signatories berequired?
I find no general state statute regarding the signatories on city checks. It is, therefore, my opinion that it is generally permissible for the city council to designate the authorized signatories as contemplated in your question. Arkansas Code Annotated § 14-59-105 (1987) addresses the disbursement of municipal funds by check; section 14-59-105 refers only to the "authorized disbursing officer." Section 14-59-105 provides in part:
 (a) All disbursements of municipal funds, except as noted in § 14-59-106, petty cash funds, are to be made by prenumbered checks drawn upon the bank account of that municipality.
 (b) The checks shall be of the form normally provided by commercial banking institutions and shall contain as a minimum the following information:
(1) Date of issue;
(2) Check number;
(3) Payee;
(4) Amount both in numerical and written form; and
(5) Signature of authorized disbursing officer of the city.
Section 14-59-105 does not specify who is the "disbursing officer of the city," and the section merely sets out the minimum requirements. Consequently, it is my opinion that the city may require more than one signature on a check. In Op. Att'y Gen. No. 93-332, this office opined that a city council was within its authority to pass a resolution that removed the mayor as a signatory on any check issued by the city and identified three other individuals as authorized signatories. However, as noted in that opinion, A.C.A. § 14-58-703 (1987) specifically requires that the mayor and city clerk be the signatories on checks issued from the "revolving cash fund."[6]
Question 12 — Can the city council set the salaries for police officers,or is this the sole prerogative of the mayor? (The council had passed abudget including a lump sum for salaries.)
It is my opinion that the city council has the authority to set the salaries for police officers. In fact, it is the exclusive responsibility of the city council, as the legislative body of the city, to determine whether any salary will be paid. See City of Greenbrier v. Cotton,293 Ark. 264, 737 S.W.2d 444 (1987); see also Czech v. Baer, 283 Ark. 457,677 S.W.2d 833 (1984). As discussed in Question 2, the city council possesses local legislative authority regarding city affairs. See A.C.A. § 14-43-502. Pursuant to § 14-43-502, the city council is granted management and control of finances. Accordingly, the city council is responsible for passing upon matters involving funding of the police department. See Op. Att'y Gen. No. 91-415. It should, however, be noted that because the council passed a budget that included a lump sum for salaries, any changes to the budget would be governed by A.C.A. §14-58-203 (1987).
Question 13 — What constitutes a majority for the purposes of (a) fillinga vacancy, (b) passing an ordinance, or (c) passing a resolution — amajority of the full council or a majority of the members present as longas a quorum is present and voting?
It is my opinion that A.C.A. § 14-55-203 (1987), which pertains to municipal ordinances generally, specifically answers the second and third parts of your question. Section 14-55-203(b) provides: "[t]o pass any bylaw, ordinance, resolution, or order, a concurrence of a majority of a whole number of members elected to the council shall be required." Thus, in order to pass an ordinance or a resolution, a concurrence of a majority of a whole number of members elected to the council is required. See Op. Att'y Gen. No. 91-002.
With regard to the filling of a vacancy, additional statutory provisions must be considered. Initially, it is my understanding that your question refers to filling a vacancy on the city council. As previously discussed, A.C.A. § 14-44-104 provides:
 Whenever a vacancy shall occur in the office of alderman in any city of the second class, at the first regular meeting after the occurrence of the vacancy, the city council shall proceed to elect, by a majority vote of the council, an alderman to serve for the unexpired term.
Thus, A.C.A. § 14-44-104 simply provides that a "majority vote of the council" is necessary to fill a vacancy. This provision, however, must be read in conjunction with the more recently enacted A.C.A. § 14-42-103(a) (1987) which provides:
 Vacancies in municipal offices which are authorized by state law to be filled by appointment by the city or town governing body shall require a majority vote of the remaining members of the governing body. However, there must always be a majority of a quorum of the whole number of the governing body to fill the vacancy.
Consequently, in order to fill a vacancy on the city council, there must be a majority vote of the remaining members of the of the city council — not simply a majority of those present. However, there must always be a majority of a quorum of the whole number of the governing body in order to fill the vacancy. See Op. Att'y Gen. Nos. 90-301 and 90-028 (two remaining members of a five person council could not fill the vacancies on the city council; Governor has authority to fill vacancies in such a case.). Finally, § 14-42-103 would also apply to filling vacancies other than on the city council, which are authorized by state law to be filled by appointment by the city council.
Question 14 — Is the recorder-treasurer allowed to be present at"Informal" meetings of the city council (Committee of the Whole)? Areminutes to be kept of such meetings? If so, are they filed as councilminutes or committee minutes?
The Arkansas Freedom of Information Act provides that "[e]xcept as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities . . . shall be public meetings." A.C.A. § 25-19-106
(Repl. 1992). Thus, it appears that the FOIA would apply to the "informal" meetings of the council, and the meetings must be open to the public, which would include the recorder-treasurer. Further, although applicable ordinances must be consulted regarding the minutes of any meeting, it has been stated that "[a] municipal council or governing body speaks only through its records, and hence should keep a correct record of its proceedings." 62 C.J.S. Municipal Corporations § 409 (1949).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] Although the term "elect" is used in A.C.A. § 14-44-116, with either an "appointment" or an "election" the governing body "elects" a person to fill the vacant office. See Op. Att'y Gen. No. 96-052.
[2] It should be emphasized that a member of the governing body shall not vote on his own appointment.
[3] Although at first glance it appears that such dual office-holding could be subject to a constitutional challenge under the "separation of powers" doctrine (Ark. Const. art. 4, § 2), this office has noted that in the context of dual office-holding, this doctrine has been held applicable only to state offices. Op. Att'y Gen. Nos. 95-178 and 94-220.
[4] It should be noted that the office of treasurer is not necessarily vacant simply because no candidate filed for the office. See generally
Question 10, infra. This office has stated that as a general matter, it does not appear that a vacancy is necessarily created when there has been a failure to elect an individual to succeed an incumbent in office. Op. Att'y Gen. No. 94-069. In fact, Ark. Const. art. 19, § 5 provides: "[a]ll officers shall continue in office after the expiration of their official terms until their successors are elected and qualified."
[5] A violation of the provision could possibly be premised upon a public official's hiring of a family member if, for instance, customary hiring procedures were not followed or if the person was not qualified. Op. Att'y Gen. No. 89-220.
[6] It should be noted that Act 555 of 1995 repealed A.C.A. § 14-58-701
(1987) which authorized cities of the first or second class to create a revolving cash fund. Nevertheless, the statute regarding disbursement of funds from such an account has not been repealed. Further, it is my opinion that, in a city of the second class, the mayor and recorder must be the signatories on checks issued from the "revolving cash fund." This conclusion is based upon the fact that state statutes do not provide for a city clerk in a city of the second class; however, the General Assembly has recognized that the recorder in a city of the second class is comparable to the city clerk in a city of the first class. See generally
A.C.A. § 14-55-205 (1987); A.C.A. § 14-47-123 (1987); A.C.A. § 8-5-603
(Repl. 1993); A.C.A. § 21-8-306 (Supp. 1995).