The Honorable John H. Dawson State Representative Post Office Box 336 Camden, Arkansas 71701-0336
Dear Representative Dawson:
This is in response to your request for an opinion regarding sick leave, annual leave, vacation pay, and retirement benefits for elected municipal officials. It is my understanding from your letter that, in January 1976, a person was appointed to the office of city clerk of the City of Camden. At that time, the city operated under the city manager form of government. In October 1995, the city changed from the city manager form of government to the mayor/council form of government. In the election held in August 1995, the appointed city clerk was elected to serve as city clerk under the mayor/council form of government; the person assumed the elected office in October 1995. Your letter states that on the date of the transition from the city manager form of government to the mayor/council form of government, the appointed city clerk had accrued 42.5 days of annual leave and 117 days of sick leave. Specifically, you have asked the following questions regarding these facts:
 1. Does this municipality have a just and legal debt to the present elected official for the accrued days of [sick] and annual leave that had been credited prior to the transition to the new form of government?
 2. Do elected municipal officials qualify for annual leave and/or sick leave? If yes, under what provision of our statutes is this provided for?
It is my opinion that the awarding of annual and sick leave to municipal officers is a matter that is governed primarily by local ordinance, so long as the city does not violate any of the limitations imposed by law.See generally Op. Att'y Gen. No. 95-247.
Amendment 56, § 4, to the Arkansas Constitution provides that "Compensation of municipal officers and officials shall be fixed by the governing body of the municipality, not to exceed limits which may be established by law." Additionally, this office has recognized that one of the limitations on the authority of the governing body of a city is found at A.C.A. § 14-43-409 (1987). Op. Att'y Gen. No. 95-186. Section14-43-409 provides:
 All officers provided for in this subtitle, and by ordinance of any city under this subtitle, shall receive such salary as the council of any city may designate, and in no instance shall they receive an additional compensation by way of fees, fines, or perquisites. All fees, fines, or perquisites shall be paid into the city treasury.
By the terms of the Code, § 14-43-409 appears to apply only to cities of the first class; however, the statute has been interpreted to apply as well to cities of the second class and incorporated towns. Conner v.Burnett, 216 Ark. 559, 226 S.W.2d 984 (1950); Op. Att'y Gen. No.92-244.[1]
Thus, it is clear that the governing body of a municipality has the responsibility for determining the compensation of municipal officers, subject to limitations established by law. Further, it is my opinion that the term "compensation" would include the awarding of annual and sick leave. Consequently, it is also my opinion that the decision to provide annual and sick leave is a matter that is governed primarily by local ordinance.
With regard to your first question, it is unclear whether the city clerk wishes to be paid in cash for his unused annual and sick leave or whether he wishes to be "credited" with the time accrued by having it applied towards potential leave granted to the elective office of city clerk. However, under either scenario, it is my opinion that the matter is governed by local ordinance. See Op. Att'y Gen. No. 95-247. Initially, the burden would be on the appointed city clerk to establish the existence of an ordinance entitling him to annual and sick leave. SeeCity of El Dorado v. Faulkner, 107 Ark. 455, 155 S.W. 516 (1913); City ofGreenbrier v. Cotton, 293 Ark. 264, 737 S.W.2d 444 (1987); Op. Att'y Gen. No. 95-247. If the appointed city clerk can establish that a city ordinance entitled him to annual and sick leave, he could have a valid claim against the city for such leave on the basis of that ordinance. However, the city clerk would still be required to establish that his entitlement to such leave has not otherwise been impaired. See Op. Att'y Gen. No. 95-247. (For example, the city may also have enacted an ordinance prohibiting an officer from accruing more than 30 days of annual leave.) Finally, if the appointed city clerk establishes his entitlement to sick or annual leave, local ordinances would necessarily have to be consulted to determine whether he may be paid in cash for such unused leave or whether he may use the leave as the elected city clerk.
As to your second question, it is my opinion that elected municipal officers generally do not qualify for annual or sick leave unless it is provided for by local ordinance. In a city operating under the mayor/council form of government, it is the responsibility of the city council, as the legislative body of the city, to determine whether any compensation or salary will be paid.[2] Ark. Const. amend. 56, § 4; A.C.A. 14-43-409 (1987); City of Greenbrier v. Cotton, supra. As mentioned earlier, it is my opinion that the term "compensation" would include the awarding of annual and sick leave; therefore, it is within the city's discretion to award annual or sick leave. The city, however, cannot enact an ordinance contrary to state law. Ark. Const. art. 12, §4; Ark. Const. amend. 7; see also Czech v. Baer, 283 Ark. 457,677 S.W.2d 833 (1984). Consequently, state law must be consulted to determine whether there are any limitations upon the governing body of the city with regard to annual or sick leave.
My research has revealed only two areas where the state has enacted statutes that provide for leave to an elected municipal officer. City marshals, as law enforcement officers, are entitled to receive holiday compensation, paid vacation, and sick leave under the provisions of A.C.A. § 14-52-105—107 (1987 and Supp. 1995). See Op. Att'y Gen. Nos.95-247 and 91-123. Also, all municipal and township officials may, under certain circumstances, be granted a leave of absence from their respective offices and duties to perform active military service. A.C.A. § 21-4-302 (1987).
Finally, with regard to retirement benefits, it should be noted that I have previously opined that cities may only opt to provide retirement plans pursuant to A.C.A. §§ 24-12-101 et seq. See Op. Att'y Gen. Nos.95-247 and 88-341. Arkansas Code Annotated §§ 24-12-101 et seq. authorizes cities to choose to provide retirement plans and benefits to their "paid nonuniformed employees." The phrase "paid nonuniformed employees" is defined to include the mayor, city attorney, city treasurer, city clerk, and municipal judge. A.C.A. § 24-12-101 (Repl. 1992). Consequently, the answer to your questions regarding retirement benefits for municipal officers will depend upon whether the city has voted to provide a retirement plan and retirement benefits to its nonuniformed employees.
In sum, it is my opinion that the awarding of annual and sick leave to elected municipal officers other than a city marshal is a matter that is governed by local ordinance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] With regard to the city manager form of government, A.C.A. § 14-47-133 (1987) provides in part:
 (a) Subject to the exceptions contained in § 14-47-108, every person appointed by the board of directors to any municipal office, . . . shall serve for such time and shall receive such compensation as the board may fix and determine by ordinance.
 (b) This section shall be applicable even in respect to offices and employments which, under statutes applicable to the aldermanic form of government, were held for a fixed term or on a salary basis fixed by statute.
[2] This office has concluded that the Supreme Court has implied that an appropriate salary for services rendered would be the reasonable value of those services, and a city would be well-advised to designate a salary that is commensurate with the value of the services rendered by the municipal officer. See Op. Att'y Gen. No. 95-186.